UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

JOHN KELLEHER,                                   Case No.: 7:17-cv-05424 (VB)

        Plaintiff,

  -against-

FRED A. COOK, INC.,

        Defendant.

------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT

**GORDON REES SCULLY MANSUKHANI, LLP**
ATTORNEYS FOR DEFENDANT
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL ALLEGATIONS .......................................................................................................4

ARGUMENT .................................................................................................................................6

I.      STANDARD OF REVIEW ...............................................................................................6

II.     PLAINTIFF'S CLAIMS ARE TIME-BARRED ...............................................................8

III.    PLAINTIFF FAILS TO STATE PLAUSIBLE CLAIMS UNDER THE ADA ................10

      A.      Legal Standard for Associational Discrimination under the ADA .........................10

      B.      Plaintiff Fails to Plead a Plausible Claim for Associational Discrimination Based on the Distraction Theory ...............................................................................12

            1.      Plaintiff's Alleged Demotion .....................................................................13

            2.      Plaintiff's Termination ................................................................................14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. Globe Motorists Supply Co.*
   833 F. Supp. 211 (S.D.N.Y. 1993) .................................................................................... 7

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................ 6, 7

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................................ 6

*Dellatte v. Great Neck Union Free Sch. Dist.*
   448 Fed. Appx. 164 2012 U.S. App. LEXIS 1139 (2d Cir. Jan. 20, 2012) ....................... 7

*Dessources v. Am. Conf. Inst.*
   2013 U.S. Dist. LEXIS 69406 (S.D.N.Y. May 14, 2013) ................................................ 12

*Graziadio v. Culinary Inst. of Am.*
   817 F.3d 415 (2d Cir. 2016) ....................................................................................... 11, 12

*James v. Countrywide Financial Corp.*
   849 F. Supp. 2d 296 (E.D.N.Y. 2012) ............................................................................... 7

*Johnson v. Nyack Hosp.*
   86 F.3d 8 (2d Cir. 1996) .................................................................................................... 9

*Johnson v. St. Barnabas Nursing Home*
   368 Fed. App'x 246 (2d Cir. 2010) ................................................................................... 9

*L-7 Designs, Inc. v. Old Navy, LLC*
   647 F.3d 419 (2d. Cir. 2011) ............................................................................................. 7

*Larimer v. IBM Corp.*
   370 F.3d 698 (7th Cir. 2004) ........................................................................................... 12

Littlejohn v. City of New York
   795 F.3d 297 (2d Cir. 2015) .............................................................................................. 8

*Martinez v. Riverbay Corp.*
   2016 U.S. Dist. LEXIS 138411 (S.D.N.Y. Oct. 4, 2016) ............................................... 8, 9

McClendon v. Bronx Cty. Dist. Attys. Office
   764 F. Supp. 2d 626 (S.D.N.Y. 2011) ............................................................................... 8

# **TABLE OF AUTHORITIES**

**Page**

*Smith v. Local 819 I.B.T. Pension Plan*
   291 F.3d 236 (2d Cir. 2000) ............................................................................................. 7, 9

*South v. Saab Cars USA*
   28 F.3d 9 (2d Cir. 1994) ...................................................................................................... 10

*Tiberio v. Allergy Asthma Immunology of Rochester*
   664 F.3d 35 (2d Cir. 2011) ................................................................................................ 8, 9

*Toombs v. New York City Hous. Auth.*
   2017 U.S. Dist. LEXIS 45544 2017 WL 1169649 (S.D.N.Y. Mar. 27, 2017) ..................... 11

*Vega v. Hempstead Union Free Sch. Dist.*
   801 F.3d 72 (2d Cir. 2015) .............................................................................................. 8, 11

*Young v. Lord & Taylor, LLC*
   937 F. Supp. 2d 346 (E.D.N.Y. 2013) ............................................................................... 7, 9

*Zerilli-Edelglass v. New York City Transit Authority*
   333 F.3d 74 (2d Cir. 2003) ..................................................................................................... 9

**Statutes**

42 United States Code
   Section 2000e-5 ..................................................................................................................... 8

42 United States Code
   Section 12112 ....................................................................................................................... 11

**Rules**

Federal Rules of Civil Procedure
   Rule 12 ........................................................................................................................... 1, 3, 7

**Treatises**

29 Code of Federal Regulations
   Section Pt. 1630.8, app. at 349 ............................................................................................ 11

**PRELIMINARY STATEMENT**

Defendant Fred A. Cook, Inc. ("Defendant") submits this memorandum of law in support of its motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  Plaintiff John Kelleher ("Plaintiff") has alleged violations under the Americans with Disabilities Act ("ADA"), based upon claims of a wrongful demotion, wrongful termination, and failure to provide a reasonable accommodation related to his association with his daughter, who suffers from a disability.

At the outset, all of Plaintiff's claims are time-barred as he failed to commence his federal court action within ninety (90) days of his receipt of the Dismissal and Notice of Rights, issued by the United States Equal Employment Opportunity Commission ("EEOC") on August 10, 2016 ("Notice of Dismissal").  In fact, Plaintiff filed this lawsuit on July 18, 2017, almost one full year after the EEOC issued and mailed to Plaintiff (and Defendant) the Notice of Dismissal.  While Plaintiff alleges that he did not receive the EEOC Notice of Dismissal until May 4, 2017, the Second Circuit employs a rebuttable presumption that absent sufficient evidence to the contrary, it is presumed that a plaintiff received the notice of dismissal three (3) days after its mailing, which in this case would have been August 13, 2016.  Thus, in order to commence suit against Defendant under federal law based on his EEOC Charge, Plaintiff would have had to file his complaint with this Court within 90 days of August 13, 2016 or by no later than November 11, 2016.  Aside from alleging that he "repeatedly request[ed] that the EEOC issue that document [the Notice of Dismissal]," while, upon information and belief, represented by his attorneys of record in the agency proceedings below, Plaintiff fails to plead any facts that would rebut the presumption that he received the Notice of Dismissal within three days.

Even if Plaintiff can somehow overcome this procedural obstacle, that he filed his complaint more than eight (8) months too late, he fails to state a claim for failure to provide him with a reasonable accommodation or for discrimination under the ADA. First, as to Plaintiff's claim that Defendant wrongfully denied his requests for a reasonable accommodation, the ADA does not require employers to provide an employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities.

Second, Plaintiff alleges that after he informed Defendant that his daughter has a serious health condition, his working relationship with Defendant changed for the worse in that they thought his association with his daughter would serve as a distraction. In purported support of his discrimination claim, Plaintiff makes several conclusory allegations that Defendant believed that Plaintiff's association with his disabled daughter would be a distraction and that Defendant unreasonably believed that Plaintiff's association with his disabled daughter would cause him to miss work. Plaintiff further attributes the termination of his employment to his needing to leave work as soon as his shift ended in light of his daughter's disability. While the ADA does recognize "distraction," (the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention), as a situation falling within the associational discrimination provision of the ADA, it does not recognize the scenario in which the employee is actually sufficiently distracted at work that he would need an accommodation in work schedule. Since Plaintiff's allegations fall into the latter situation, his claim for discrimination must fail. Finally, Plaintiff fails to plead facts that his termination and/or alleged demotion occurred under circumstances raising a reasonable inference that the disability of his daughter was a determining factor in Defendant's decision.

Accordingly, Defendant respectfully requests that Plaintiff's complaint be dismissed in its entirety, with prejudice, pursuant to FRCP Rule 12(b)(6).

## PROCEDURAL HISTORY

On or about July 18, 2017, Plaintiff filed his complaint in the United States District Court for the Southern District of New York. *See* **Exhibit A** (Complaint, ECF Document 1).[1] Prior to that and on or about November 6, 2015, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which was dually filed with the EEOC and alleged unlawful discriminatory practices relating to his employment because of a disability. *See* **Exhibit B** (NYSDHR Complaint). Plaintiff was represented by counsel, Bergstein & Ullrich, LLP, during the NYSDHR investigation. *See* **Exhibit C** (Amendment to the NYSDHR Complaint) at p. 2. On May 6, 2016, the NYSDHR issued its Determination and Order after Investigation, concluding that there was no probable cause to believe that Defendant had engaged in or is engaging in the unlawful discriminatory practice of which Plaintiff complained. *See* **Exhibit D** (NYSHDR Determination and Order).

On August 10, 2016, the EEOC issued and mailed to Plaintiff the Notice of Dismissal. *See* **Exhibit E** (Dismissal and Notice of Rights); *see also* Declaration of Holly Shabazz, dated January 12, 2018 ("Shabazz Declaration") at ¶ 2. According to Plaintiff's allegations, despite repeatedly requesting that the EEOC issue that document, the Notice of Dismissal,[2] he did not receive the Notice of Dismissal until May 4, 2017. *See* Exhibit A at ¶ 7.

---

[1] All exhibits referenced herein are to the accompanying Declaration of David J. Grech, dated January 12, 2018 ("Grech Declaration") and shall be referred to as "Exhibit _."

[2] The EEOC has no record that the Notice of Dismissal was ever returned to its office as undeliverable. *See* Shabazz Declaration at ¶ 3. In addition, the EEOC has no record of Plaintiff or any representative acting on his behalf ever making any request for the Notice of Dismissal or a copy thereof either orally or in writing. *See id.* at ¶ 4.

## **FACTUAL ALLEGATIONS**[3]

Plaintiff alleges that on November 11, 2014, he commenced his employment with Defendant as a Laborer with an hourly rate of $20.00 as well as an Operator in the Vactor Division with an hourly rate of $26.00.  *See* Exhibit A at ¶ 8.  According to Plaintiff, in or around February 2015, management praised his performance and Brian Cook ("Mr. Cook"), president of Defendant, asked Plaintiff if he wanted to be CCTV Truck Operator.  *See id.* at ¶ 9.  Plaintiff alleges that he agreed to "this promotion" and abandoned his own business selling and designing fire trucks part-time so he could focus on his career with Defendant.  *See id.*  Plaintiff further alleges that he performed his duties as CCTV Truck Driver in a satisfactory manner and that Mr. Cook praised him for his performance.  *See id.* at ¶ 10.

Plaintiff alleges that in early March 2015, he told Mr. Cook that his daughter, born in May 2014, has a serious medical condition, at that time believed to be a form of epilepsy.  *See id.* at ¶ 11.[4]  Plaintiff claims that this was the first of many occasions in which he told Mr. Cook about his daughter's illness.  *See id.*  Plaintiff alleges that during this first occasion, he told Mr. Cook that if his daughter's condition worsened, he would have to rush home to care for his other children so his fiancée could take his daughter to see various doctors for treatment.  *See id.*

According to the complaint, after Plaintiff told Mr. Cook about his daughter's medical needs, his relationship with Defendant changed for the worse.  *See id.* at ¶ 13.  Plaintiff alleges that Mr. Cook directed him to work in the shop with a rate of pay of $26.00 per hour, while his co-workers were able to handle municipal work at the higher "prevailing wage" of $48.00 to

---

[3] On a motion to dismiss, all facts listed in the complaint are presumed true for purposes of the motion.  Defendant reserves the right to contest the facts set forth in the complaint should it be necessary during the course of the litigation, including the right to raise, as an affirmative defense, the legitimate and non-discriminatory business reasons it had for terminating Plaintiff's employment.

[4] Plaintiff states that his daughter was later formally diagnosed in 2016 with Rett Syndrome, a severe neurological disorder.  *See* Exhibit A at ¶ 12.

$78.00 per hour. *See id.*

Plaintiff alleges that Defendant believed that his association with his disabled daughter would be a distraction and that he would not be able to focus on his job responsibilities. *See id.* at ¶ 14. In support of this allegation, Plaintiff further alleges that Defendant unreasonably believed that his association with his disabled daughter would cause him to miss work. *See id.*

On March 27, 2015, according to Plaintiff, Mr. Cook, Christopher Cook, and Defendant's comptroller met with Plaintiff to advise Plaintiff that he had to stop rushing home after his 10-12 hour workdays as they expected employees to remain on-site for possible emergency work. *See id.* at ¶ 15. Plaintiff alleges that he was rushing home to care for his daughter and that the need to care for his daughter greatly outweighed Defendant's "speculative insistence that employees remain available after-hours on an as-needed basis." *Id.* During the March 27, 2015 meeting, Plaintiff alleges that he asked management for 8 hour workdays for a period of approximately one week to accommodate his daughter's health condition. *See id.* at ¶ 16. Plaintiff claims that during the meeting, management told him that he would not be receiving his raise and for the first time, criticized his job performance, falsely accusing him of breaking company equipment. *See id.* at ¶ 17. Plaintiff alleges that at the end of the meeting, Mr. Cook told him that Plaintiff's problems at home were not the company's problems. *See id.* at ¶ 18. According to Plaintiff, Mr. Cook's statement "made it clear" that Defendant believed that Plaintiff's daughter's health issues were a distraction and would cause Plaintiff to be inattentive to his job responsibilities. *See id.*

Plaintiff alleges that the day after the March 27, 2015 meeting was a Saturday and that his daughter had to be taken to the hospital. *See id.* at ¶ 19. Plaintiff told Mr. Cook that he would not be able to report to work that Monday. *See id.* Plaintiff alleges that when he returned to work on Tuesday, he discovered that he had been demoted from Operator to Laborer, a less

prestigious position. *See id.* Plaintiff claims that he was demoted because Defendant unreasonably assumed that his daughter's disability would distract him and prevent him from fully focusing on his position as Operator. *See id.* at ¶ 20. Plaintiff alleges that at this point, he requested an accommodation that would allow him to work 8 hour shifts so he could travel to the hospital in Albany for his daughter. *See id.* at ¶ 21. Plaintiff claims that Mr. Cook denied his request for an accommodation and required that he work late each night. *See id.*

Plaintiff alleges that on April 16, 2015, Mr. Cook sent him home after arriving to work 10-15 minutes late and said that the company would call him if it needed his services. *See id.* at ¶ 22. Plaintiff claims that April 16, 2015 was his last day of employment with Defendant. *See id.* On May 11, 2015, Plaintiff alleges that he received a letter dated April 16, 2015 stating that his employment had been terminated. *See id.* at ¶ 23. Plaintiff claims that Defendant never gave him a reason for his termination and believes he was terminated because he told Defendant he needed to leave work as soon as his shift ended in light of his daughter's disability. *See id.* at ¶¶ 22, 24.

## ARGUMENT

### I.     STANDARD OF REVIEW

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). The plausibility standard does not ask whether there is a probability that the claim has merit, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

After the complaint has been stripped of its conclusory pleadings, the court must

determine if the remaining allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.  A claim only has facial plausibility if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296, 307 (E.D.N.Y. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).  "A complaint 'that offers labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Dellatte v. Great Neck Union Free Sch. Dist.*, 448 Fed. Appx. 164, 165, 2012 U.S. App. LEXIS 1139, at *2 (2d Cir. Jan. 20, 2012) (quoting *Iqbal*).  "[C]onclusory allegations or legal conclusions masquerading as factual contentions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2000) (internal citation and quotations omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d. Cir. 2011) (citation omitted).  In that regard, plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Id*.

Moving to dismiss claims for timeliness or on statute of limitations grounds in the employment discrimination context comes under the umbrella of FRCP 12(b)(6).  *See, Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 350 (E.D.N.Y. 2013) ("[t]he ninety day time period is not a jurisdictional requirement for commencement of an action in the district court.  Instead, the time limit is in the nature of a statute of limitations . . . ."); *Archer v. Globe Motorists Supply Co.*, 833 F. Supp. 211, 213 (S.D.N.Y. 1993) (time limitations in employment discrimination

cases are not jurisdictional).

At the pleadings stage of an employment discrimination case, a plaintiff has a "'*minimal* burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "[T]he facts alleged in the complaint[, however,] must provide "'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 87.

Based on the above standard, and as demonstrated more fully below, Plaintiff's claims cannot survive the instant motion to dismiss as his complaint utterly fails to state a claim upon which relief may be granted.

## II.   PLAINTIFF'S CLAIMS ARE TIME-BARRED

An employment discrimination suit brought under Title VII must be filed within 90 days after the giving of notice by the EEOC. *See*, 42 U.S.C. § 2000e-5(f)(1). The same requirement applies where claims are to be brought under the ADA. *See, Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). "[T]his requirement should be strictly enforced and not extended by even one day." *Martinez v. Riverbay Corp.*, 2016 U.S. Dist. LEXIS 138411, *8 (S.D.N.Y. Oct. 4, 2016) (internal quotation omitted). "[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *McClendon v. Bronx Cty. Dist. Attys. Office*, 764 F. Supp. 2d 626, 631 (S.D.N.Y. 2011).

There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice. *See, Tiberio*, 664 F.3d at 37. In the Second Circuit, "[a]bsent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing." *Johnson v. St. Barnabas Nursing Home*, 368 Fed. App'x 246, 248 (2d Cir. 2010). Firm substantiation, rather than unsupported self-serving allegations that plaintiff received the right to sue letter more than three days after its mailing, is required to rebut the applicable three-day presumption of receipt. *Id.*; *see also Martinez*, 2016 U.S. Dist. LEXIS 138411, at *10-14.

In some circumstances, however, Courts may toll the 90-day requirement. "The Second Circuit has stated that 'equitable tolling is only appropriate "in [ ] rare and exceptional circumstance[s]," in which a party is "prevented in some extraordinary way from exercising his rights."'" *Young*, 937 F. Supp. 2d at 351 (quoting *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80-81 (2d Cir. 2003), quoting *Smith v. McGinnis*, 208 F.3d 13,17 (2d Cir. 2000) and *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)).

> Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to the misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

*Id*. (internal citations omitted).

A plaintiff's failure to act diligently is not a reason to invoke equitable tolling. *See, South v. Saab Cars USA*, 28 F.3d 9, 12 (2d Cir. 1994). Similarly a lack of due diligence on the part of a plaintiff's attorney is insufficient to justify application of an equitable toll. *See, id.*

Here, the EEOC issued the Notice of Dismissal and mailed it to Plaintiff on August 10, 2016. *See* Exhibit E; *see also* Shabazz Declaration at ¶ 2. Pursuant to the presumption employed by the Second Circuit, Plaintiff received the Notice of Dismissal on August 13, 2016. As such, Plaintiff needed to have filed his federal lawsuit on or before November 11, 2016. Instead, Plaintiff filed his federal lawsuit on July 18, 2017. *See* Exhibit A. In support of his assertion that he filed his federal lawsuit within 90 days of his receipt of the Notice of Dismissal, Plaintiff alleges that he did not receive the Notice of Dismissal until May 4, 2017, despite repeatedly requesting that the EEOC issue it. *See id.* at ¶ 7. Apart from Plaintiff's self-serving allegation that he did not receive the Notice of Dismissal until May 4, 2017 after repeatedly requesting that the EEOC issue it, which is not supported by EEOC records (*see* Shabazz Declaration at ¶¶ 3-4), Plaintiff has failed to plead any facts that would rebut the presumption that he received the Notice of Dismissal three days after its mailing. Nor does Plaintiff allege any facts so extraordinary that would make equitable tolling appropriate in this case.

As such, Plaintiff's claims for discrimination under the ADA are time-barred and must be dismissed.

### III. PLAINTIFF FAILS TO STATE PLAUSIBLE CLAIMS UNDER THE ADA

#### A. Legal Standard for Associational Discrimination under the ADA

"'The ADA prohibits . . . "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."'" *Toombs v. New York City Hous.*

10

*Auth.*, 2017 U.S. Dist. LEXIS 45544, *17, 2017 WL 1169649 (S.D.N.Y. Mar. 27, 2017) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016) (quoting 42 U.S.C. § 12112(b)(4))).  "The ADA's bar on associational discrimination does not, however, require that employers provide an 'employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities.'" *Id.* at *19 (quoting 29 C.F.R. § Pt. 1630.8, app. at 349).

In order to plead a facially plausible claim (*i.e.* a *prima facie* case) for associational discrimination under the ADA, a plaintiff must allege in the complaint: "1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Id.* at *18.

Plaintiff claims that he suffered two adverse actions: a demotion and a termination.  An adverse employment action is one that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85.  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

Here, Plaintiff alleges that he suffered these adverse employment actions as a result of associational discrimination. There are three types of situations or theories recognized in the Second Circuit that can give rise to a claim of associational discrimination:

> 1) "expense," in which an employee suffers adverse action because of his association with a disabled individual covered by the

> employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) "disability by association," in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and 3) "distraction," in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person.

*Graziadio*, 817 F.3d at 432.

The distraction theory is limited to the scenario in which an "employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours." *Dessources v. Am. Conf. Inst.*, 2013 U.S. Dist. LEXIS 69406, *8 (S.D.N.Y. May 14, 2013) (citing *Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)); *see also Graziadio*, 817 F.3d at 432-33 (holding that plaintiff could not sustain an ADA claim for associational discrimination based on theory that she was terminated because her employer felt she had taken too much leave from work to care for her sons versus her employer suspecting distraction or concern for sons would cause her to perform her work inadequately). "[A]n employee who actually *is* sufficiently distracted at work that he would need an accommodation in work schedule would not be entitled to one under the ADA 'because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person.'" *Graziadio*, 817 F.3d at 432 n.11 (quoting *Larimer*, 370 F.3d at 700) (emphasis in original).

### B. Plaintiff Fails to Plead a Plausible Claim for Associational Discrimination Based on the Distraction Theory

Plaintiff alleges that he suffered two adverse employment actions due to his association with his disabled daughter: a demotion and his ultimate termination. First, Plaintiff fails to allege that he suffered a demotion evidenced by a decrease in wage or salary, a less distinguished

12

title, or a material loss of benefits. Nor does he claim that similarly situated co-workers without disabled children or spouses received more favorable treatment. Second, while a termination is a recognized adverse employment action, Plaintiff fails to allege that it took place under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

### 1. Plaintiff's Alleged Demotion

Plaintiff alleges in his complaint that he was hired as a Laborer and Operator in the Vactor Division with hourly rates of $20.00 and $26.00 respectively. *See* Exhibit A at ¶ 8. Plaintiff alleges that after he called out of work on a Monday because his daughter had to be taken to the hospital the prior Saturday, Defendant demoted him from Operator (running controls on the trucks) to Laborer (shoveling sewer systems on the ground), a less prestigious job. *See, id.* at ¶ 19. Prior to the alleged demotion, Plaintiff states that in February 2015, Mr. Cook asked Plaintiff if he wanted to be CCTV Truck Operator, and Plaintiff characterized the opportunity as a promotion. *See, id.* at ¶ 9. Nowhere does Plaintiff detail his new job duties or responsibilities or his new hourly rate as CCTV Truck Operator. Plaintiff alleges that when he informed Mr. Cook about his daughter's medical needs in early March 2015, he was directed to work in the shop while co-workers were able to handle municipal works at the higher "prevailing wage" of $48.00 to $78.00 per hour and that Plaintiff's salary in this new role was now $26.00 per hour. *See, id.* at ¶ 13. Since Plaintiff offers no further allegations regarding the CCTV Truck Operator position and Plaintiff's role as Operator upon his hire was at an hourly rate of $26.00, as well as the fact that he was hired also in the Laborer position (at the rate of $20.00 per hour or $6.00 less than the rate Plaintiff received when he was allegedly directed to work in the shop), it is unclear what demotion Plaintiff is claiming occurred.

13

Putting Plaintiff's opinion regarding prestige aside, Plaintiff fails to allege that he suffered a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. Nor does he claim that similarly situated co-workers without disabled children or spouses received more favorable treatment, aside from the conclusory statement that while he was directed to work in the shop, "co-workers were able to handle municipal work at a higher 'prevailing wage' of $48.00 to $78.00 per hour" while his salary was $26.00 per hour. *See, id.*

As Plaintiff has failed to plead an adverse employment action related to an alleged demotion, his *prima facie* case related to that claim fails at the outset. Even if the alleged demotion was deemed an adverse employment action, Plaintiff does not allege any conduct that directly implicates any protected classification or otherwise gives rise to an inference of discrimination, rendering him incapable of satisfying the fourth prong of his *prima facie* case. *See infra*, pp. 14-15.

### 2. Plaintiff's Termination

According to the complaint, Defendant "terminated Plaintiff's employment because he told them he needed to leave work as soon as his shift ended in light of his daughter's serious disability." *See* Exhibit A at ¶ 24.

Plaintiff's claims only concern the distraction scenario, *see supra*, pp. 11-12, and implicate an alleged distraction stemming from his association with his disabled daughter. Plaintiff's claims, however, center around his requests for an accommodation, a right to which he is not entitled. As demonstrated in the complaint, Plaintiff's own admissions go far beyond being somewhat inattentive at work to instead needing an accommodation to be absent from work. This is established early on when Plaintiff first informs Defendant that he has a disabled

daughter as he expressly states that he told Mr. Cook that "when his daughter's condition worsened, he would have to rush home . . ." *Id.* at ¶ 11. The proffered animus that Defendant allegedly has against Plaintiff is not that he is somewhat inattentive at work but that he is absent, that is, Plaintiff has to miss work because what he needed was an accommodation. *See id.* at ¶¶ 14-16, 19-21. As Plaintiff details in his complaint, he made two requests for an accommodation: eight-hour workdays or shifts. *See id.* at ¶¶ 16, 21. By his own admission, he was terminated because he told Defendant "he needed to leave work as soon as his shift ended in light of his daughter's serious disability" or he was terminated because he made requests for an accommodation. *See id.*

Since Plaintiff alleges that he was terminated because he made requests for an accommodation, a right that he is not entitled to, he has not plausibly pleaded a claim for associational discrimination. Nor has he alleged any conduct that implicates that Defendant discriminated against him under the distraction theory because his situation extended beyond the recognized scope of the distraction theory as he was not somewhat inattentive but rather needed an accommodation in work schedule.

As such, Plaintiff has failed to plausibly plead that his termination occurred under circumstances raising a reasonable inference that his association with his disabled daughter was a determining factor in Defendant's decision.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's complaint in its entirety, with prejudice, and for other such relief to which Defendant has showed itself justly entitled.

Dated:     January 12, 2018
           New York, New York

                                    Respectfully Submitted,

                                    GORDON REES
                                  SCULLY MANSUKHANI, LLP

                                  By: ___/s/ *Jamie Haar*___
                                  David J. Grech, Esq.
                                  Jamie Haar, Esq.
                                  *Attorneys for Defendant*
                                  1 Battery Park Plaza, 28th Floor
                                  New York, NY  10004
                                  (212) 269-5500