UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN KELLEHER, :
:
        Plaintiff, :
: **OPINION AND ORDER**
v. :
: 17 CV 5424 (VB)
FRED A. COOK, INC., :
:
        Defendant. :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff John Kelleher brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), against defendant Fred A. Cook, Inc., for allegedly terminating plaintiff's employment because of his daughter's disability.

      Now pending is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #21).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      For the purpose of deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor. The following facts are taken from the complaint and the documents attached thereto or incorporated by reference therein.[1]

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

1

On November 11, 2014, plaintiff began working for defendant as both a "Laborer" and an "Operator in the Vactor Division." (Compl. ¶ 8). Defendant is in the sewage, septic, and pipeline cleaning business. (Grech Aff. Ex. B).

In early March 2015, plaintiff told Brian Cook, defendant's owner, that plaintiff's daughter had a serious medical condition. Plaintiff told Cook "that when his daughter's condition worsened, he would have to rush home to care for his other children so his fiancé [sic] could take his daughter to see various doctors for treatment." (Compl. ¶ 11).

On March 27, 2015, plaintiff met with Mr. Cook and other company officials. At that meeting, defendant, through its agents, told plaintiff "that he had to stop rushing home after his 10-12 hour workdays." (Compl. ¶ 15). In response, plaintiff asked for "eight-hour workdays for a period of approximately one week to accommodate his infant daughter's serious health condition." (Compl. ¶ 16). At that meeting, plaintiff was also told he would not get a raise. Mr. Cook told plaintiff "that his problems at home were not the company's problems." (Compl. ¶ 18). Plaintiff asserts "the company expected employees to remain on-site for possible emergency work after punching out at the end of their shift." (Compl. ¶ 15).

The next day, a Saturday, plaintiff's daughter had a seizure and was taken to Albany Medical Center. Plaintiff told Mr. Cook he would not be able to work the following Monday. Plaintiff alleges when he returned to work on Tuesday, he had been demoted from operator to laborer.

Around this time, plaintiff "requested an accommodation" to work eight-hour shifts for a week to allow him to travel to Albany to see his daughter in the hospital. (Compl. ¶ 21). Plaintiff alleges Mr. Cook denied his request and ordered plaintiff to work late.

2

Shortly thereafter, on April 16, 2015, plaintiff arrived approximately ten- to fifteen-minutes late to work. Mr. Cook sent plaintiff home, telling him defendant would call if it needed plaintiff to work. On May 11, 2015, plaintiff received a letter notifying him of his termination.

On November 6, 2015, plaintiff filed a charge of discrimination with the New York State Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC").

Plaintiff alleges he received an EEOC notice of right to sue (the "right-to-sue letter") on May 4, 2017. He commenced this action on July 18, 2017, by filing a complaint.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

3

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Id.

II.      Statute of Limitations for ADA Claims

Defendants argue plaintiff's ADA claim should be dismissed because it is barred by the relevant statute of limitations.

The Court disagrees.

It is well established that "[b]efore filing a Title VII or ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC." Thomson v. Odyssey House, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015) (citations omitted), aff'd, 652 F. App'x 44 (2d Cir. 2016) (summary order). When a plaintiff is issued a notice of right to sue from the EEOC, he "has 90 days from receipt of that notice to file a lawsuit relating to those charges." Id. (citing Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 38 (2d Cir. 2011)).

"Normally it is assumed that a mailed document is received three days after its mailing." Sherlock v. Montefiore Medical Center, 84 F. 3d 522, 525 (2d Cir. 1996). However, "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." Id. at 526. In deciding whether a plaintiff timely filed his complaint, courts should accept as true statements made in the complaint itself, and consider affidavits filed in opposition to a motion to dismiss. See Friedman v. Swiss Re Am. Holding Corp., 512 F. App'x 94, *1–2 (2d. Cir. 2013) (summary order).

Here, plaintiff filed his EEOC charge on November 6, 2015. The right to sue letter is

dated August 10, 2016.  However, plaintiff alleges he did not receive the right to sue letter "until May 4, 2017."  (Compl. ¶ 7).

Defendant submitted a declaration from Holly Shabazz, the "State & Local Program Manager for the U.S. Equal Employment Opportunity Commission ("EEOC"), New York District Office."  (Shabazz Decl.).  In that declaration, Ms. Shabazz declares under penalty of perjury that (i) the right to sue letter was mailed to plaintiff on August 10, 2016; (ii) the right to sue letter was not returned as undeliverable; and (iii) the EEOC has no record plaintiff or plaintiff's counsel requested a copy of the right to sue letter.

In opposition to the motion to dismiss, plaintiff submitted a declaration from Evelyn Bell, a legal assistant at the law firm representing plaintiff.  Bell declares under penalty of perjury that the law firm representing plaintiff received the right to sue letter on May 4, 2017.  Plaintiff also submitted his own declaration in which he declares, under penalty of perjury, that he did not receive the right to sue letter at all.  Plaintiff also declares it was his practice to immediately send correspondence he received from the EEOC to his counsel in this case.

Although it is a close call, accepting as true the allegations of the complaint, and construing all inferences in plaintiff's favor, the Court finds plaintiff adequately alleges he received the right to sue letter on May 4, 2017.

Plaintiff filed his complaint on July 18, 2017, seventy-five days after he alleges he received the right to sue letter.

Accordingly, plaintiff timely commenced this action.

III. <u>ADA Claim</u>

Defendant argues plaintiff fails to state a claim for associational discrimination under the ADA.

5

The Court agrees.

"The ADA prohibits . . . 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.'" Graziadio v. Culinary Inst. of America, 817 F.3d 415, 432 (2d Cir. 2016) (quoting 42 U.S.C. ¶ 12112(b)(4)).

To state a claim for "associational discrimination" under the ADA, a plaintiff must plead "1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Graziadio v. Culinary Inst. of America, 817 F.3d at 432 (2d Cir. 2016).

Here, plaintiff has alleged, and defendant does not dispute, that plaintiff was qualified for his job at the time of his termination, and defendant knew of plaintiff's child's disability. Thus, the Court need only address the fourth element of the associational discrimination claim.

The Second Circuit recognizes three situations that raise a discriminatory inference under the fourth factor of an associational discrimination claim: expense, disability by association, and distraction. See Graziadio v. Culinary Inst. of America, 817 F.3d at 432. Here, distraction is the only theory advanced by plaintiff. Under the distraction theory, the employee suffers an adverse employment action because "the employer fears that the employee will be inattentive at work due to the disability of the disabled person." Id. (citing Larimer v. Int'l Bus. Machs. Corp., 370 F.3d 698, 700 (7th Cir. 2004)). However, "an employee who actually is sufficiently distracted at work that he would need an accommodation in work schedule would not be entitled to one under

6

the ADA 'because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person.'" Id. at 432 n.11 (quoting Larimer v. Int'l Bus. Machines Corp., 370 F.3d at 700).

Plaintiff asserts it would be premature to apply Graziadio at this early stage of the litigation and on a motion to dismiss. Plaintiff also argues the three theories identified in Graziadio as sufficient to raise an inference of discrimination in support of an associational claim are not an exhaustive list.

Plaintiff's arguments are unpersuasive.

Graziadio addresses the same situation as the case at bar—namely a parent who takes time off to care for a child—and articulates, for the first time, the standard in this Circuit for an associational claim under the ADA. Graziadio specifically emphasized that the plaintiff was legally fired "because her employer felt she had taken too much leave from work to care for her sons" and not because her employer suspected plaintiff would be distracted while at work. Graziadio v. Culinary Institute of America, 817 F.3d at 432.[2]

Similarly here, plaintiff alleges defendant expected employees to stay late and defendant told him "he had to stop rushing home after his 10-12 hour workdays." (Compl. ¶ 15). Moreover, plaintiff alleges defendant fired him because "he told them he needed to leave work as soon as his shift ended in light of his daughter's serious disability." (Compl. ¶ 24). Plaintiff does not allege he was terminated because his employer felt he would be distracted at work; instead, he alleges he was explicitly unable to be at work for the entire work day, including after the end of his shift, as defendant required. As a non-disabled person, plaintiff is not entitled to

---

[2] It is not for the Court to decide what amount of time off from work is "too much" in the context of at-will employment relationships.

an accommodation of this sort, and his termination because of the request is not actionable under the ADA.

Most importantly, in Graziadio, the Second Circuit declined to expand associational discrimination claims to include cases for failure to accommodate. The procedural posture of this case is not a reason for this Court to expand the scope of the ADA and contravene the Second Circuit.

Accordingly, the ADA claim is dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #21) and close this case.

Dated: July 26, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge