N.Y.S.D. Case #
17-cv-5424(VB)

18-2385
Kelleher v. Fred A. Cook, Inc.

# United States Court of Appeals for the Second Circuit

AUGUST TERM 2018
No. 18-2385

JOHN KELLEHER,
*Plaintiff-Appellant,*

v.

FRED A. COOK, INC.,
*Defendant-Appellee.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 24 2019

ARGUED: MAY 10, 2019
DECIDED: SEPTEMBER 24, 2019

BEFORE: JACOBS, LEVAL, CIRCUIT JUDGES, FURMAN\*, DISTRICT JUDGE.

    John Kelleher appeals from a judgment of the United States District Court for the Southern District of New York (Briccetti, J.) dismissing his complaint, which alleges associational discrimination under the Americans with Disabilities Act. Because the complaint supports an inference that the plaintiff was qualified for his position and that he was fired because his supervisor assumed he would be distracted by his daughter's disability, he has stated a claim for associational discrimination. Accordingly, we VACATE and REMAND.

---

\* Judge Jesse M. Furman, United States District Court for the Southern District of New York, sitting by designation.

STEPHEN BERGSTEIN, BERGSTEIN & ULLRICH, LLP, NEW PALTZ, NY, FOR THE APPELLANT.

MERCEDES COLWIN (DAVID J. GRECH, ON THE BRIEF), GORDON REES SCULLY MANSUKHANI, LLP, NEW YORK, NY, FOR THE APPELLEE.

DENNIS JACOBS, *Circuit Judge*:

Plaintiff John Kelleher appeals from a judgment of the United States District Court for the Southern District of New York (Briccetti, J.) dismissing his complaint against his former employer, Fred A. Cook, Inc. (the "Company"), for associational discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Kelleher alleges that he was fired because his employer assumed that he would be distracted by his daughter's serious disability. Because the circumstances alleged do plead a claim for associational discrimination under the ADA, we vacate the judgment and remand.

2

## BACKGROUND

We assume the truth of plausible allegations contained in the complaint.

In November of 2014, Kelleher began working for the Company as a Laborer and an Operator. Kelleher received favorable performance reviews and, in February 2015, was promoted to the position of CCTV Truck Operator.

Kelleher's daughter had been born in May of 2014 with a severe neurological disorder, Rett Syndrome, that affects the ability to speak, walk, breathe, and eat, among other things. The condition was not fully diagnosed until 2016; up to then, she appeared to suffer from epilepsy.

In early March 2015, before his daughter was diagnosed with Rett Syndrome but while she was suffering from the symptoms, Kelleher first told Brian Cook, one of his supervisors, that his daughter had a serious medical condition and that he may have to occasionally rush home to aid in her care. After this conversation, Kelleher's relationship with the Company deteriorated, and he was directed to work in "the shop" while his coworkers handled other work at a higher wage. On Friday, March 27, 2015, Kelleher's supervisors advised him that he could not leave work immediately after his shifts to care for

3

his daughter because he was expected to remain on site in case of emergency. (Kelleher alleges that although the company "expect[ed]" employees to remain on-site after punching out, doing so did not "affect [his] job responsibilities". J. App'x 14 .)   During the meeting, Kelleher unsuccessfully asked to work 8-hour shifts for one week (instead of 10-12 hour shifts) in order to attend to his daughter's condition.   He was told that "his problems at home were not the company's problems," and that he would not receive a raise.   J. App'x 14 .

The next day (Saturday), Kelleher's daughter suffered a near-fatal seizure and was taken to Albany Medical Center.   Kelleher told Cook that he would be unable to work the following Monday.   When he arrived at work on the following Tuesday, Kelleher learned that he had been demoted from his position as an Operator, where his responsibilities included running controls on trucks, to Laborer, where his chief responsibility involved shoveling sewer systems--"a less prestigious position."   J. App'x 15.   (Kelleher does not challenge the demotion.)

At some point after Kelleher's demotion, he again requested 8-hour shifts so he could visit his daughter in Albany.   The request was denied.   On April 16, 2015, two and a half weeks after the day of work he missed for the hospital visit,

Kelleher arrived to work 10-15 minutes late; he was told to go home and that he would be called if his services were required. A month later, Kelleher received a letter (dated a month earlier) informing him that he had been terminated.

After obtaining a notice of right to sue from the Equal Employment Opportunity Commission, Kelleher filed his complaint in the Southern District of New York alleging that his termination violated the ADA. The district court dismissed Kelleher's complaint because he did "not allege he was terminated because his employer felt he would be distracted at work; instead, he alleges he was explicitly unable to be at work for the entire work day, including after the end of his shift, as defendant required." Kelleher v. Fred A. Cook, Inc., No. 17-cv-5424 (VB), 2018 WL 3611965, at *4 (S.D.N.Y. July 26, 2018). This appeal followed.

## DISCUSSION

We review de novo a dismissal of a complaint for failure to state a claim upon which relief may be granted. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "To survive a motion to dismiss, a complaint must

5

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

# I

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To state a claim for associational discrimination under the ADA, a plaintiff must allege:

> 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016). One

6

scenario that may support an inference that the adverse employment decision was motivated by associational discrimination is "distraction": the employer's "fear[] that the employee will be inattentive at work due to the disability of the disabled person." Id.

Claims alleging such discrimination are governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (applying this framework to ADA claims). A temporary presumption of discriminatory motive arises if a plaintiff can show (1) that he is a member of a protected class, (2) that he was qualified for employment in the position, (3) that he suffered an adverse employment action, and (4) that there is some minimal evidence supporting an inference that his employer acted with discriminatory motivation. The burden then shifts to the employer to set forth a non-discriminatory basis for the adverse action. The purpose of this burden-shifting is to discourage dismissal of employment discrimination claims without an employer having to set forth a legitimate reason for the adverse action. Littlejohn v. City of New York, 795 F.3d 297, 306-08 (2d Cir. 2015). Accordingly, a plaintiff's burden to

7

establish an initial prima facie case is, by design, "minimal and de minimis." Woodman v. WWOR–TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (cleaned up).

Littlejohn explained that the same temporary presumption that "reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation . . . also reduces the facts needed to be pleaded under Iqbal." Littlejohn, 795 F.3d at 310. Accordingly, to state a claim, a plaintiff must plausibly allege "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. at 311.

Here, there is a procedural anomaly because the complaint affirmatively pleads and thereby anticipates the employer's non-discriminatory reasons for the adverse employment action--and the employer relies on that pleading alone to argue that Kelleher's termination was justified.

8

II

Neither party disputes that the complaint satisfies the second and third elements of a claim of associational discrimination: Kelleher's termination constitutes an adverse employment action, and Cook knew that Kelleher's daughter was severely disabled.

The Company argues that Kelleher's requests for an accommodation to attend to his daughter and his attendance (missing one day of work, arriving 15 minutes late on another, and leaving immediately after his shifts) doom his claim. This argument implicates both qualification (whether he can do the job) and the reason for the termination: absenteeism, which is a non-discriminatory justification for firing him, *or* the expectation that his daughter's disability will be a distraction, which is not.

The district court concluded that Kelleher's qualifications were not at issue, see Kelleher, 2018 WL 3611965, at *3 ("Here, plaintiff has alleged, and defendant does not dispute, that plaintiff was qualified for his job at the time of his termination."), an impression produced by muddled briefing. The court was right in the sense that Kelleher is qualified to be a Laborer or Operator. But the

9

issue of qualification arises nevertheless because of Kelleher's request for accommodation, which the ADA does not mandate employers to provide in this context. See Graziadio, 817 F.3d at 432 (quoting Larimer v. Int'l Bus. Machs. Corp., 370 F.3d 698, 700 n.11 (7th Cir. 2004) ("[T]he right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person."))[1]. The Company cites Kelleher's request, along with his absenteeism, as proof that he is unable to perform the job without an accommodation, to which he has no right.

An employee is qualified if he "can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Although courts are deferential to an employer's judgment regarding what functions are essential to a particular position, the question involves "a fact-specific inquiry into both the employer's

---

[1] The ADA provides: "The term 'reasonable accommodation' may include include--(A) making existing facilities used by employees readily accessible to and usable by *individuals with disabilities*; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations *for individuals with disabilities*." 42 U.S.C. § 12111(9) (emphases added).

10

description of a job and how the job is actually performed in practice." Stevens v. Rite Aid Corp., 851 F.3d 224, 229 (2d Cir. 2017) (quoting McMillan, 711 F.3d at 126). Discovery may be necessary to determine whether an employee was qualified for a particular position.

The Company contends that Kelleher's request for an 8-hour shift defeats his claim because he is not entitled to an accommodation under the ADA. But the argument is confused: Kelleher's request is not an admission of inability to perform the essential functions of his position without shorter shifts. And while Kelleher's allegations acknowledge one missed one day of work, one 15-minute late arrival, and a tendency to leave immediately after his shifts, those allegations do not render his claim as to his qualification for the job implausible. Though the ADA does not require an employer to *provide* a reasonable accommodation to the nondisabled associate of a disabled person, an employer's *reaction* to such a request for accommodation can support an inference that a subsequent adverse employment action was motivated by associational discrimination. Thus, in this case, Cook's demand that Kelleher "leave his personal problems at home" after Kelleher requested one week of shortened workdays supports Kelleher's claim

11

that his later termination was motivated by associational discrimination.

An employer can make its own rules, and is not required to be tolerant of small, isolated infractions, or of common workplace behavior such as leaving after one's shift. Depending on the employer's business, policy, and practice, such conduct may impair performance in a way that renders the employee unqualified. But when, as here, the reasons for termination are composed of small, isolated infractions, common workplace behavior, or requests for an 8-hour shift, we cannot say that the complaint concedes facts that would, as a matter of law, render Kelleher unqualified for employment shoveling sewer systems. Whether Kelleher can perform the essential functions of the job cannot be decided on the pleadings alone.

The complaint also satisfies the fourth element of an associational discrimination claim: an inference that the disability of the plaintiff's relative or associate was a determining factor in the employer's adverse action. Kelleher was told that "his problems at home were not the company's problems" at the March 27, 2015 meeting, J. App'x 14, and he was effectively demoted after he missed a day's work to care for his daughter. These allegations provide all that

12

is needed to raise a minimal inference that Kelleher's employer thought that Kelleher's daughter was a distraction, and concern over distraction was a "determining factor" in Kelleher's termination.

The Company, and the district court, submit that this case is like <u>Graziado</u>, which held that the plaintiff had not adduced sufficient evidence giving rise to an inference of associational discrimination to overcome her employer's motion for summary judgment when she admitted that she was reinstated at her job after taking two weeks off to care for her disabled child, and terminated only after later taking two or more months off, for reasons unrelated to the need to care for her disabled child. 817 F.3d at 432. An obvious ground for distinguishing <u>Graziado</u> is that Kelleher was not reinstated. More fundamentally, <u>Graziado</u> was decided on summary judgment. On a motion to dismiss, we do not consider potential nondiscriminatory reasons for termination; we examine the complaint to determine whether it contains "at least minimal support for the proposition that the employer was motivated by discriminatory intent." <u>Littlejohn</u>, 795 F.3d at 311. Whether such motivation was "the true reason (or in any event not the sole reason) for the employment decision" is a

13

question that cannot be resolved on these pleadings alone. Id. at 307. "The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." Id. at 311.

## CONCLUSION

We have considered Appellee's remaining arguments and find them to be without merit. For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for further proceedings.

14

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit